IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CITY OF ALBUQUEQUE,

      Plaintiff,

v.                                      CV 21-0349 JHR/GJF

THE SEGAL COMPANY (Western States),
a Maryland Corporation d/b/a Segal Consulting,

      Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNT III OF THE COMPLAINT

THIS MATTER comes before the Court on Defendant the Segal Company (Western States), Inc.'s Motion to Dismiss Count III of the Complaint [Doc. 4], filed April 22, 2021. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned Magistrate Judge to conduct dispositive proceedings in this matter, including entering final judgment. [Doc. 12]. Having thoroughly reviewed the parties' submissions and the applicable law, the Court grants the Motion.

### I.    BACKGROUND

Plaintiff City of Albuquerque contracted with Segal on August 12, 2016, for "brokering and consulting services" regarding its program of health benefits for city employees. [Doc. 1, p. 1; Doc. 1-1, pp. 1-2]. Supplemental agreements were executed by the parties with the most recent one effective on September 20, 2019. [Doc. 1-1, p. 2].

The City commenced this case in New Mexico's Second Judicial District Court on March 16, 2021, claiming three causes of action: 1) breach of contract, 2) negligence and negligent

1

misrepresentation, and 3) violation of New Mexico's Unfair Practices Act ("UPA"). [Doc. 1-1, pp. 5-7].

Segal removed this case to federal court on April 15, 2021, [Doc. 1], and filed this motion to dismiss the UPA claim on April 22, 2021. [Doc. 4]. Segal argues that the City is not a "person" as defined by the UPA and thus lacks standing to pursue relief. [*Id.*, pp. 7-9]. The City responded on May 13, 2021, [Doc. 14], and Segal replied on May 27, 2021. [Doc. 15].

II.    <u>**ANALYSIS**</u>

The Unfair Practices Act declared unlawful "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce", NMSA 1978, § 57-12-3 (1971), and created a private right of action for actual or statutory damages for "[a]ny person who suffers any loss of money or property … as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act …" NMSA 1978, § 57-12-10 (2005). The word "person", therefore, not only circumscribes who can maintain a suit for an unfair practice but who can be held responsible for it.

The UPA includes a specific definition of "person":

> As used in the Unfair Practices Act: A. "person" means, where applicable, natural persons, corporations, trusts, partnerships, associations, cooperative associations, clubs, companies, firms, joint ventures or syndicates[.]

NMSA 1978, § 57-12-2 (2019). Segal contends that

> the City is not a "person" who has standing to maintain a claim under the UPA, because (1) governmental entities are not expressly identified in the UPA's definition of "person", (2) the courts have concluded that governmental entities are not "persons" who can sue or be sued under the UPA, and (3) the UPA was not enacted to protect sophisticated parties, like the City.

[Doc. 4, p. 9]. The City counters that

> the City has a cause of action under the UPA, because (1) the City is a "person" as contemplated by the UPA; and, (2) the City's interest as a consumer seeking

services from and relying on Segal to provide the promised services—accurate cost projections and data analysis—is within the zone of interests to be protected by the UPA. The City is simply a consumer of Segal's services, …

[Doc. 14, p. 7]. The dispute boils down to whether the New Mexico Legislature intended that a governmental entity such as the City be considered a "person" that can maintain a suit under the UPA.

A "municipality" under New Mexico law can be "any incorporated city, town or village, whether incorporated under general act, special act or special charter[1], …." NMSA 1978, § 3-1-2(G) (2019). Founded in 1706 and organized as a city under Territorial laws, the City of Albuquerque reorganized under state laws in 1917 through a charter which has been amended periodically since. *See The City of Albuquerque Charter Historical Postscript*, American Legal Publishing (Nov. 10, 2021, 9:24 AM), https://codelibrary.amlegal.com/codes/albuquerque/latest/albuqcharter/0-0-0-891#JD_CharterPS. The current charter describes the City as a "municipal corporation" and "a body corporate" performing "all functions not expressly denied by general law or charter." *The City of Albuquerque Charter Article I. Incorporation and Powers*, American Legal Publishing (Nov. 10, 2021, 9:28 AM), https://codelibrary.amlegal.com/codes/albuquerque/latest/albuqcharter/0-0-0-131.

In New Mexico law, as well as federal law, the first step in statutory construction is to attempt to apply the plain meaning of the words of the legislation. *Stansell v. New Mexico Lottery*, 2009-NMCA-062, ¶ 7, 146 N.M. 417, 211 P.3d, 214, (citing *Albuquerque Redi-Mix, Inc. v. Scottsdale Ins. Co.*, 2007-NMSC-051, ¶ 6, 142 N.M. 527, 168 P.3d 99); *Gibbons v. Ogden*, 22 U.S. 1, 71 (1824). The word "corporation" has multiple meanings in the law. Commonly it refers to a business entity "having authority under law to act as a single person distinct from the

---

[1] Municipalities incorporated under special acts or charters that were created before April 1, 1884, and continue to operate under those charters. NMSA 1978, §3-3-1 (1965).

shareholders who own it and having rights to issue stock and exist indefinitely; ….." *Corporation*, Black's Law Dictionary (11th ed. 2019). Even more generally, a corporation is "a group or succession of persons established in accordance with legal rules into a legal or juristic person that has a legal personality distinct from the natural persons who make it up, exists indefinitely apart from them, and has the legal powers that its constitution gives it." *Id.*  A New Mexico municipality would not meet the first definition, but (recognizing that a charter is functionally equivalent to a "constitution") would be a corporation in the second sense. The ambiguity of the word "corporation" prevents resolution of this dispute by plain meaning alone. Fortunately, the New Mexico courts have addressed the issue.

Whether the word "corporation" as used in the UPA has the broader or narrower meaning was the focus of *Stansell v. New Mexico Lottery* where a claim was filed against the New Mexico Lottery alleging an unfair practice of "pulling games from the market that still had substantial cash prizes available." 2009-NMCA-062, ¶ 2. The task of the New Mexico Court of Appeals was first to classify the Lottery as an entity and then to interpret the UPA's definition of "person." Stansell argued that the behavior and structure of the Lottery, as created by the state legislature, was that of a corporation, a type of entity included in the definition of "person" for the UPA. *See id.* ¶ 5. The Court acknowledged that the Lottery was created with some corporate attributes, but also observed that it was established as "a public body, politic and corporate, separate and apart from the state, constituting a government instrumentality", *id.*, ¶ 8, and not only is empowered to conduct "public or state functions" but also is denied some typical corporate powers. *Id.*, ¶¶ 8, 9. The Lottery, ultimately, is "a governmental instrumentality, empowered with the authority to maneuver in a corporate environment to accomplish its public purpose", *id.*, ¶ 10 (citation omitted), but is not "an actual corporation." *Id.*, ¶ 10. The statutory description of the Lottery as "a public

body, politic and corporate", NMSA 1978, § 6-24-5(A) (1995), did not indicate intent to create a typical corporation but instead a "unit of government", a different animal entirely. *Stansell*, 2009-NMCA-062, ¶ 11.  And therefore, the Court held, "[s]ince the Legislature did not include any government body or the Lottery within UPA's definition of 'person,' the Lottery is not subject to the UPA." *Id.*, ¶¶ 5, 12; accord, *Cedrins v. Santa Fe Community College*, No. 30,543, mem. op. at 2 (N.M. Ct. App., Oct. 13, 2010) (dismissing UPA claims against community college because, under the holding of *Stansell*, "the UPA does not cover governmental entities") (non-precedential).

The City wants to limit the precedential effect of *Stansell* to identifying proper UPA defendants but not plaintiffs. An obvious flaw is the fact that the New Mexico Legislature used "person" to describe both plaintiffs and defendants, § 57-12-10, and provided a single definition of "person" including "corporations" to be used "where applicable", § 57-12-2(A), presumably meaning wherever the word "person" appears in the UPA. Courts presume that a word has the same meaning every time it is used in the same statute unless the terms of the statute indicate a contrary intent.  *New Mexico v. Jade G.,* 2007-NMSC-010, ¶ 28, 141 N.M. 284, 154 P.3d 659 ("it is considered a normal rule of statutory construction to interpret identical words used in different parts of the same act as having the same meaning") (internal citation, modification, and quotations omitted); *Atlantic Cleaners & Dryers, Inc. v United States*, 286 U.S. 427, 433 (1932).

The City's implicit argument to abandon the consistent usage canon is that there is a difference, other than conduct, between a "person" who can file a UPA claim and a "person" who can be accused of a UPA violation. [*See* Doc. 14, pp. 9-10]. Nothing in the UPA's text suggests this distinction, nor does any New Mexico case interpret the UPA to this effect. The City's approach is to suggest that non-UPA cases generally hold that municipalities are "persons" and such a general rule overcomes the implication of *Stansell* that if municipalities can't be UPA

defendants, neither can they be UPA plaintiffs. Upon examination, the City's authorities fall short of persuasive.

*Santa Fe Custom Shutters & Doors, Inc. v. Home Depot U.S.A., Inc.*, 2005-NMCA-051, ¶ 17, 137 N.M. 524, 113 P.3d 347, tackled a difficult issue of identifying the buyer and seller in a complicated transaction. Holding that sellers of goods and services do not have standing to bring a UPA claim against buyers, *id.*, ¶ 17, the analysis had nothing to do with interpretation of "person" or "corporation" in the UPA. Plaintiff Santa Fe Custom Shutters & Doors, Inc., was a true business corporation, and nowhere in the case does any challenge assert that it was not a "person" which could maintain a claim if valid. The issue in *Santa Fe Custom Shutters* was whether, when a manufacturer/installer sells its product to end users through an intermediary who has an executory duty to promote sales, the intermediary's obligation to deliver marketing services reverses the roles of the parties so that the manufacturer is now buyer and the intermediary a seller subject to suit under the UPA. *Id.*, ¶ 18. The case stands for the proposition that the "common understanding" of the roles of buyer and seller in a transaction governs instead, *id.*, and is no help deciding who is a "person" as defined by the UPA.

The City provides *Town of Mesilla v. City of Las Cruces*, 1995-NMCA-058, ¶ 9, 120 N.M. 69, 898 P.2d 121, as an example where a municipality was found within the category of "persons" authorized initiate court action. [Doc. 14, pp 8-9]. There are three problems with applying *Town of Mesilla* to this case. First, it does not involve the UPA but zoning laws. *See Town of Mesilla*, 1995-NMCA-058, ¶ 2. Second, distinct from the UPA, the zoning statute did not define "person." *See id.*, ¶ 7. Third, *Town of Mesilla* endorsed a general rule, that municipalities should be considered "persons" unless expressly excluded, that rests upon weak foundations. The case arose when the Town objected to a zoning decision of the neighboring City of Las Cruces that the Town

feared would cause it aesthetic and economic harm. *Id.*, ¶ 2. The zoning statute, NMSA 1978, § 3-21-9(A) (1999), granted an appeal to district court to any "person aggrieved" by a zoning decision. *Town of Mesilla*, 1995-NMCA-058, ¶ 6. The City questioned whether a municipality could be a "person aggrieved" by a zoning decision. The *Mesilla* Court considered the claimed injury "aggrieving" enough to support standing to appeal, but only if the Town could also be considered a "person". *See id.*, ¶ 6. As mentioned, the zoning statute did not define "person" and, without textual guidance, the *Mesilla* Court applied a presumption that municipalities should be considered "persons" unless expressly excluded. *Id.*, ¶ 11. Though appropriately rejecting a contrary rule from *Southern Union Gas Co. v. N.M. Pub. Serv. Comm'n*, 1971-NMSC-035, 82 N.M. 405, 482 P.2d 913, because the utility statute in that case expressly excluded municipalities that did not opt in, *Town of Mesilla*, 1995-NMCA-058, ¶¶ 7-8, the *Mesilla* Court declared its belief, without citation to authority, that the word "person", if unambiguous and without further definition, would include municipalities. *Town of Mesilla*, 1995-NMCA-058, ¶ 9. Notably, *Stansell* in interpreting the UPA endorsed a converse rule: "absent express words to the contrary, neither the state nor its subdivisions are included within the general words of a statute." 2009-NMCA-062, ¶ 15 (quoting *Lucero v. Richardson & Richardson, Inc.*, 2002-NMCA-013, ¶ 11, 131 N.M. 522, 39 P.3d 739). The cases discussed by *Town of Mesilla* as persuasive involved labor laws and private labor unions, or equal protection claims, or zoning disputes where the issue was not "personhood" but whether a municipality was "aggrieved". *See* 1995-NMCA-058, ¶¶ 9-10 (citations omitted). The *Mesilla* Court further deduced that the word " 'corporation' would appear to include a municipal corporation" because NMSA 1978, Section 3-18-1(E) (1972), authorizes exercise of "privileges that are incident to corporations of like character or degree", *Town of Mesilla*, 1995-NMCA-058, ¶ 9, *Stansell* instead relied upon the differences between

"corporations" and "municipal corporations" and found them to outweigh the similarities when interpreting the UPA. *Stansell*, 2009-NMCA-062, ¶¶ 10-12; *see also Cedrins*, No. 30,543, mem. op. at 2.

The parties present two other arguments that can be addressed in brief. Segal proposes that a party otherwise qualified to sue under the UPA should be denied standing if it is more "sophisticated" than the typical consumer, citing *United States ex rel. Custom Grading, Inc. v. Great American Ins. Co.*, 952 F. Supp. 2d 1259 (D.N.M. 2013) (citing *Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 22, 142 N.M. 437, 442, 166 P.3d 1091). While the proposition may or may not be consistent with the New Mexico Legislature's intent, it is dicta in both cited cases. *See Custom Grading*, 952 F. Supp. 2d at 1268 (The UPA claim fails because the plaintiff makes no allegation of a false or misleading statement); *Lohman*, 2007-NMCA-100, ¶¶ 25-26 (deciding whether indirect communications with consumers, such as through mass advertising, are actionable).

The City proposes that, regardless of whether it is a "person" within the UPA definition, it should still be allowed to file a UPA claim whenever it falls within the "zone of interest" of the UPA because of the nature of the commercial activity involved. [Doc. 14, p. 14 ("an innocent consumer" / "a purchaser of services")]. The City's citation to *GandyDancer, LLC v. Rock House CGM, LLC*, 2019-NMSC-021, 453 P.3d 434, an invitation to rewrite the UPA's standing limitations in service to principles of equity, [Doc. 14, p. 15], would do such harm to those limitations as to make them unrecognizable.

III.        **<u>CONCLUSION</u>**

Because the City is not a "person" within the specific definition in the UPA, the City is not

authorized to pursue a UPA claim.  Therefore, the Court grants Segal's Motion to Dismiss Count

III of the Complaint and dismisses Count III of the Complaint with prejudice.

_____
JERRY H. RITTER
U.S. MAGISTRATE JUDGE
*Presiding by Consent*